UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSEPH T. REESE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:12-cv-01695-DKL-WTL |
| CAROLYN W. COLVIN Acting Commissioner of the Social Security Administration, | ) ) ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Joseph T. Reese ("Reese") requests judicial review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration (the "Commissioner"),[1] denying Reese's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") disability benefits. For the reasons set forth below, the Commissioner's decision is **AFFIRMED.**

### I.   BACKGROUND

#### A.  Procedural History

Reese filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") on October 20, 2009, alleging an onset of disability of January 1, 1996. [Dkt. 14-2 at 11.] Reese's applications were denied initially on January

---

[1] Carolyn W. Colvin became the Acting Commissioner of the SSA on February 14, 2013, while this case was pending. Pursuant to Fed. R. Civ. P. 25(d), she is substituted for the former Commissioner Michael J. Astrue.

19, 2010, and upon reconsideration on April 19, 2010. [Id.] Reese requested a hearing, which was held via videoconference on July 14, 2011, before Administrative Law Judge Robert M. Senander ("ALJ"). The ALJ denied Reese's application on October 6, 2011. [Dkt. 14-2 at 8.] The Appeals Council denied Reese's request for review of the ALJ's decision on October 15, 2012, making the ALJ's decision final for purposes of judicial review. Reese filed his Complaint with this Court on November 17, 2012. [Dkt. 1.]

### B. Factual Background and Medical History

Reese was born on May 18, 1976 and was 35 years old at the time of the hearing. He alleges mental impairments including depression, attention deficit disorder and learning disability. Reese has worked intermittently, but none of the jobs qualified as substantial gainful activity due to their short durations.

Reese asserts an onset of disability in 1996, when he was 19 years old. The medical record, however, contains no treatment records until 2003. In June 2003, Reese received a health screening upon incarceration at the Indiana Department of Corrections. At that time, Reese reported no mental or physical problems. His mental status examination was normal and he was noted as having "no disability."

Beginning in March of 2004, Reese met weekly for one month with a medical assistant in the correctional facility to discuss feelings of depression over missing his family, being incarcerated and the death of his father. On the final visit, the medical assistant noted Reese's improved mental status.

The next medical record in evidence is a January 2010 psychological evaluation recommended by the Social Security Administration. The evaluation notes Reese's

claimed disability as "learning disability/ADD." [Dkt. 14-7 at 29.] Reese reported sometimes feeling depressed, but he had never been diagnosed with depression, taken medication or participated in therapy. He claimed he had learning problems related to his difficulty reading. Intellectual exams yielded scores in the low average range suggesting "mild impairment in his ability to hold onto information that has been presented verbally and manipulate it to solve problems." [Dkt. 14-7 at 30.] The examiner made no diagnosis.

Following this evaluation in January 2010, the state agency reviewing psychologist noted Reese had mild restrictions in daily living activities and concentration but no medically determinable impairments. In May 2010, Reese underwent a psychological evaluation at Buchanan Pastoral Counseling and reported he was depressed, anxious and "stressed out." [Dkt. 14-7 at 55.] The evaluating psychologist diagnosed him with dysthymic disorder (mood disorder characterized by mild depression).

Reese was evaluated by Midtown Community Mental Health Center in November 2010, where he reported depression, anxiety, poor sleep and stress. Reese requested individual therapy, which he began at Midtown in December 2010. On December 29, 2010, Reese underwent an "MD evaluation" at Midtown and was diagnosed with moderate, recurrent depression and prescribed Wellbutrin. The medical record reflects individual therapy sessions at Midtown in March 2011 and June 2011. Reese reported he was taking his medication as needed.

## II. LEGAL STANDARDS

### A. Standard for Proving Disability

To be eligible for SSI and DIB, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To evaluate a disability claim, an ALJ must use the following five-step inquiry:

> Step One: Is the claimant currently employed;
>
> Step Two: Does the claimant have a severe impairment or combination of impairments;
>
> Step Three: Does the claimant's impairment meet or equal any impairment listed in the regulations as being so severe as to preclude substantial gainful activity;
>
> Step Four: Can the claimant perform his past relevant work; and
>
> Step Five: Is the claimant capable of performing any work in the national economy?

20 C.F.R. §§ 404.1520. *See also Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the SSA has the burden at Step Five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience and functional capacity. 20 C.F.R. § 404.1560 (c)(2).

### B. Standard for Judicial Review

An ALJ's decision will be upheld so long as the ALJ applied the correct legal standard, and substantial evidence supported the decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation omitted). This limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th 2004). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (citation omitted).

5

### III.  DISCUSSION

Reese claims the ALJ committed various errors that require reversal of the Commissioner's decision.  Specifically, Reese contends the ALJ erred when he:  (1) determined Reese's mental impairments did not meet the criteria for Listing 12.04; (2) failed to summon a medical advisor to determine whether Reese's combined mental impairments medically equaled a Listing; (3) negatively assessed Reese's credibility; and (4) failed to account for Reese's mental limitations at Step Five.

#### A.  Listing 12.04 (Affective Disorders)

Reese first argues that the ALJ's denial decision was in error because "substantial psychiatric treatment and examination evidence" establish that his mental impairments met or medically equaled Listing 12.04.  [Dkt. 16 at 11.]  In support of this argument, Reese asserts the ALJ "ignored" evidence of treatment for depression from March to April of 2003 and a GAF score of 50 from June 2003.  [Dkt. 16 at 12.]  But Reese fails to provide any analysis to show how this evidence proves Reese's disability.  Instead, Reese strings together several disjointed phrases from Seventh Circuit social security decisions without connecting the law to the facts of her case.  "This method of argumentation is not argumentation at all .... The Court cannot and will not forge new arguments for [the Claimant]." *Poston v. Astrue,* 2010 WL 987734, at *8 (S.D. Ind. 2010).

Despite Reese's claim, for the length of disability claimed there is very little medical evidence in the record.  This lack of evidence was duly noted by the ALJ:  "The claimant alleges disability since January 1996.  There is no evidence of any treatment, consultation or any medically related hospitalizations until 2003.  This is after the time

6

period when claimant would be entitled to disability insurance benefits December 31, 1997 or child disability benefits May 18, 1998." [Dkt. 14-2 at 16.] Reese saw a counselor concerning symptoms of depression for one month in 2003. There was no diagnosis of depression and Reese was not prescribed medication. Reese received a diagnosis of moderate depression in December 2010, was prescribed Wellbutrin and attended a few individual therapy sessions. It is plaintiff's burden to demonstrate that her impairments meet or equal a listing. *Ribaudo v. Barnhart,* 458 F.3d 580, 583 (7th Cir. 2006). Based upon the medical record as a whole, the ALJ found Reese's mental impairment did not rise to the level of severity required to be considered "disabled" under a Listing. The Court finds there is substantial evidence to support that conclusion.

### B. Medical Advisor

Reese next asserts the ALJ was required to summon a medical advisor to testify as to whether his mental impairments met Listing 12.04. An ALJ must rely on a medical expert's opinion when finding a claimant does not meet or equal a listed impairment. SSR 96–6p. In some instances, this requires the ALJ to hear additional evidence from a medical examiner. *See Green v. Apfel,* 204 F.3d 780, 781 (7th Cir. 2000) (noting that the ALJ incorrectly made medical conclusions instead of consulting a medical examiner). However, when the medical evidence in the record is sufficient to make a decision, the ALJ may rely on it alone. *Simila v. Astrue,* 573 F.3d 503, 516 (7th Cir. 2009).

Here, the ALJ relied upon the reports of two state agency psychologists that found Reese did not have a medically determinable mental impairment. *See Scheck v.*

7

*Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004) (finding that disability forms completed by state agency physicians conclusively establish that a physician designated by the agency has given consideration to the question of medical equivalence). Reese attempts to rely upon *Barnett v. Barnhart,* 381 F.3d 664 (7th Cir. 2004), but his reliance is misplaced because the ALJ in *Barnett* did not consult a medical expert at all or rely on a signed Disability Determination and Transmittal Form. *Barnett,* 381 F.3d at 670–71. Instead, the ALJ based his findings on his own layman opinion. *Id.* at 671. By contrast, the ALJ in this present case grounded his findings in medical opinions from state agency psychologists. Accordingly, the Court finds that the ALJ did not err in holding a hearing without summoning a medical advisor to testify in this case.

Reese further argues that the ALJ should not have relied upon the 2010 opinions of the state agency physicians because they occurred prior to a 2011 car accident causing head injuries. Presumably, Reese argues, if the physicians had reviewed this evidence they would have determined Reese was totally disabled. This argument is nothing more than speculation on Reese's part and is not supported by the evidence in the record. Moreover, the ALJ considered the records concerning the car accident and cited follow-up records one month after the accident that noted Reese was "neurologically intact." [Dkt. 14-2 at 17.] The Court finds the record substantially supports the ALJ's determination that Reese did not meet or medically equal Listing 12.04.

### C. Reese's Credibility

Reese also contends the ALJ's negative credibility determination must be reversed because it is contrary to SSR 96-7p. The Court disagrees. In assessing a

claimant's credibility when the allegedly disabling symptoms are not objectively verifiable, an ALJ must first determine whether those symptoms are supported by medical evidence. *See* SSR 96–7p; *Arnold v. Barnhart,* 473 F.3d 816, 822 (7th Cir. 2007). If not, SSR 96–7p requires the ALJ to "consider the entire case record and give specific reasons for the weight given to the individual's statements." *Simila v. Astrue,* 573 F.3d 503, 517 (7th Cir. 2009) (quoting SSR 96–7p). The ALJ "should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations.'" *Simila,* 573 F.3d at 517 (quoting 20 C.F.R. § 404.1529(c) (2)-(4)). Based upon the lack of treating evidence to support Reese's allegation of total disability, the ALJ's determination to not fully credit Reese's testimony is supported by substantial evidence.

Reese also asserts the ALJ erroneously rejected the Department of Corrections 2003 GAF assessment of 50 which corroborated his testimony of total disability. [Dkt. 16 at 19.] This overstates the importance of GAF scores in the ALJ's disability analysis. Because the GAF score measures both the severity of symptoms as well as the level of functioning, and it reflects the worse of the two, the Seventh Circuit has held that "the score does not reflect the clinician's opinion of functional capacity" and the ALJ is not required to determine disability "based entirely" on the GAF score. *Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir.2010). In other words, an assessment of a GAF of 50, in and of itself, is not sufficient to establish disability. As this GAF score also is wholly

9

unsupported by the record evidence, the Court finds the ALJ's failure to specifically reference it does not constitute reversible error.

### D. Step Five and RFC

Reese's final argument for the reversal of the ALJ's decision challenges the ALJ's determination of his Residual Functional Capacity ("RFC"). Specifically, Reese asserts the ALJ failed to consider the impact of his "disabling major depressive disorder" on his ability to work as well as his GAF score of 50. [Dkt. 16 at 23.] A review of the ALJ's opinion, however, shows this argument is without merit. The ALJ noted that based upon his review of the Midtown (mental health) records, Reese would have "mild limitation of activities of daily living; mild difficulties in maintaining social functioning; and moderate deficiencies of concentration, persistence and pace." [Dkt. 14-2 at 16.] Accordingly, the ALJ determined Reese could perform "unskilled work with one or two step instructions." *Id.* Contrary to Reese's assertion, these limitations address his mental health impairment. Additionally, Reese's reliance on the single GAF assessment is misplaced. As discussed above, GAF scores, without additional support, do not indicate disability. The score upon which Reese relies is wholly without support in the medical record therefore was reasonably excluded from the ALJ's opinion. The Court concludes the ALJ's RFC is supported by substantial evidence and does not require remand.

### IV. **CONCLUSION**

The standard for disability claims under the Social Security Act is stringent. The Act does not contemplate degrees of disability or allow for an award based on partial

disability.  *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985).  Furthermore, the standard of review of the Commissioner's denial of benefits is narrow.  The Court reviews the record as a whole, but does not re-weigh the evidence or substitute its judgment for the ALJ's.  *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).  The Court must uphold a decision where, as here, it is supported by substantial evidence in the record.  As the Court cannot find a legal basis to overturn the ALJ's determination that Reese does not qualify for disability benefits, the Commissioner's decision is **AFFIRMED**.

Date: 12/26/2013

*/s/ Denise K. LaRue*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov